UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EILEEN C. DRAKE, DANIEL R. DRAKE, and
LILLIAN COATS,

                Plaintiffs,

v.

THE VILLAGE OF LIMA and VILLAGE OF
LIMA DEPARTMENT OF PUBLIC WORKS,

                Defendants.
_____

**DECISION AND ORDER**

6:20-CV-06112 EAW

# INTRODUCTION

Plaintiffs Eileen C. Drake, Daniel R. Drake, and Lillian Coats (collectively "Plaintiffs") bring this action against defendants the Village of Lima (the "Village") and the Village of Lima Department of Public Works (the "DPW") (collectively "Defendants") relating to an incident on January 13, 2019, wherein a sewer line clog resulted in damage to their property. (Dkt. 1). Defendants now seek dismissal of the majority of Plaintiffs' claims, on a variety of legal bases. (Dkt. 23). For the reasons discussed below, the Court finds that Plaintiffs' federal causes of action are subject to dismissal. The Court further declines to exercise supplemental jurisdiction over Plaintiffs' state claw claims, which are remanded to the New York State Supreme Court, Livingston County.

# FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' amended complaint. (Dkt. 15). As required at this stage of the proceedings, the Court treats Plaintiffs' factual allegations as true.

- 1 -

Plaintiffs Eileen C. Drake ("E. Drake") and Daniel R. Drake ("D. Drake") are the owners of 7398 East Main Street, Lima, New York (the "Property"), which they have resided at as a single-family dwelling since 2010. (Dkt. 15 at ¶¶ 4-6). Plaintiff Lillian Coats ("Coats") is E. Drake's mother, and resided at the Property from 2015 until January 2019. (*Id*. at ¶¶ 8, 50).

The Property is located in the Village and is connected by a lateral sewage line owned by Plaintiffs (the "Lateral Line") to a main sewer line owned, operated, maintained, and designed by Defendants (the "Sewer Line"). (*Id*. at ¶¶ 11-13).

On January 13, 2019, at approximately 5:30 p.m., a clog in the Sewer Line caused backflow to enter the Property. (*Id*. at ¶ 14). E. Drake found Coats standing in raw sewage. (*Id*. at ¶ 17). Numerous showers and sink drains on the Property overflowed with raw sewage, and the raw sewage leaked "through the floorboards of the first floor and into the basement, landing on the furnace, and slow[ly] filling the basement." (*Id*. at ¶¶ 16, 18). Eventually, the raw sewage leaking into the basement damaged the furnace and caused it to smoke. (*Id*. at ¶ 21).

Plaintiffs called 911, but were informed that emergency services could not assist them with raw sewage. (*Id*. at 19-20). D. Drake "removed the clean out-plug from the sewer plumbing in the basement to relevel the pressure in the pipes," whereupon the raw sewage "ceased to overflow from the toilets and drains and began to fill up the basement of the House." (*Id*. at ¶¶ 22-23). "When the raw sewage stopped flowing into the basement, there was approximately 3 to 4 feet of raw sewage and debris covering the floor of the basement." (*Id*. at ¶ 24).

Having smelled the smoke from the furnace, Plaintiffs called 911 a second time, and the Lima Fire Department (the "LFD") was dispatched. (*Id*. at ¶ 25). The LFD arrived and cut electric power to Plaintiffs' house. (*Id*. at ¶¶ 26-27). D. Drake was examined by emergency medical technicians, as the smell of raw sewage had caused him to feel faint. (*Id*. at ¶ 26).

Roughly 20 minutes after the backflow had begun, the superintendent of the DPW arrived at the Property. (*Id*. at ¶ 28). The superintendent informed Plaintiffs that the backflow had been "caused by a clog in the Sewer Line approximately 5 to 6 feet from the Lateral Line." (*Id*. at ¶ 29). The clog in turn was caused by "a buildup of grease and baby wipes in the Sewer Line." (*Id*. at ¶ 30). "There was also a physical object clogging the Sewer Line[.]" (*Id*. at ¶ 32). The superintendent told Plaintiffs that the clog was in the Sewer Line and not in their Lateral Line. (*Id*. at ¶ 33).

The LFD instructed Plaintiffs to evacuate the Property, as it was not safe to enter or reside there. (*Id*. at ¶ 34). E. Drake and D. Drake were unable to reside on the Property for three and a half months. (*Id*. at ¶ 36). Coats "had to be removed to reside at a senior living community, and now can no longer be cared for by her daughter." (*Id*. at ¶ 53).

The backflow incident caused "extensive damages." (*Id*. at ¶ 61). "Both the basement and the first floor of the House required extensive remediation," the furnace and the hot water tank had to be replaced, and Plaintiffs "lost numerous personal belongings . . ., including a love seat, numerous mattresses and box springs, pillows and blankets, bookshelf, numerous chairs, couch, extended dining set with six chairs, lamp, area rugs,

two Lazy Boy recliners, Christmas décor, fish aquarium, fish and equipment, vases, and numerous articles of clothing." (*Id*. at ¶¶ 64, 70, 83).

Plaintiffs' homeowner's insurance denied coverage for these damages (*id*. at ¶¶ 73-76), and Defendants' insurer sent Plaintiffs a letter "advising that Defendants were not responsible for the Incident, but also advis[ing] that a claim for the Incident would be paid if Defendants were negligent" (*id*. at ¶ 38). The Village's mayor sent a letter on January 28, 2019, taking the position that the backflow had been caused by "an issue with Plaintiffs' Lateral Line" and denying any responsibility on the part of Defendants. (*Id*. at ¶¶ 39-40).

## PROCEDURAL BACKGROUND

Plaintiffs commenced this action by filing a summons with notice in New York State Supreme Court, Livingston County, on January 13, 2020. (Dkt. 15 at ¶ 89). Defendants removed the action to this Court on February 20, 2020. (Dkt. 1). The amended complaint, which is the operative pleading, was filed on May 6, 2020. (Dkt. 15).

Defendants filed the instant motion to dismiss on June 5, 2020. (Dkt. 23). Plaintiffs filed their response on June 26, 2020 (Dkt. 25), and Defendants filed their reply on July 14, 2020 (Dkt. 28).

## DISCUSSION

### I. Standing

Defendants seek dismissal of all claims brought by Coats, on the basis that she lacks standing. "It is well established that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Ross ex rel. Dunham v. Lantz*, 408 F.3d 121, 123 (2d Cir. 2005)

(citation and alteration omitted); *see also Egan v. Loc. 363, Int'l Bhd. of Elec. Workers' Union*, No. 18-CV-4656 (NSR), 2021 WL 1092355, at *3 (S.D.N.Y. Mar. 22, 2021) ("The issue of standing is a threshold jurisdictional issue, which a federal court must entertain before reaching the merits of the case." (citation omitted)).

As the Supreme Court has explained, "standing is not dispensed in gross. To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, ___ U.S. ___, 137 S. Ct. 1645, 1650 (2017) (quotations and citations omitted). Plaintiffs' amended complaint asserts seven causes of action, of which the first six arise under state law. (Dkt. 15). For reasons set forth below, the Court does not reach the merits of Plaintiffs' state court claims, but instead declines to exercise supplemental jurisdiction and remands them to state court. Accordingly, the Court has limited its standing inquiry to Plaintiffs' federal claims.

Plaintiffs' federal claims are found in their seventh cause of action, which is asserted pursuant to 42 U.S.C. § 1983 and alleges that "Defendants violated Plaintiffs' right to equal protection, and right to be free from a taking without just compensation. . . ." (*Id*. at ¶ 140). To establish standing under federal law, a plaintiff must allege: (1) an injury in fact, meaning "an invasion of a legally protected interest"; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable ruling. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663 (1993).

Here, without differentiating between the various claims asserted by Plaintiffs, Defendants argue generally that Coats lacks standing because she was not an owner of the

Property, and thus did not suffer a cognizable injury in fact. (Dkt. 23-1 at 27-29). Defendants' standing argument lacks merit as to Plaintiffs' federal claims. Plaintiffs' amended complaint is clear that it was not only the Property that was damaged as a result of the backflow, but also significant personal property contained therein. (Dkt. 15 at ¶ 83). The amended complaint further specifically alleges that Coats was the owner of some of this personal property. (*Id.* at ¶ 55 ("Ms. Coats lost many of her beloved belongings due to the Incident.")). The loss of personal property is a sufficient injury in fact to afford Coats standing for her federal claims, and Defendants have cited no cases to the contrary. *See Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing."); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 550 (S.D.N.Y. 2014) ("Clearly, economic injuries . . . are judicially cognizable."). The Court will not dismiss Coats' federal claims for lack of standing.

## II. Failure to State a Federal Claim

Having resolved the threshold standing issue as to Plaintiffs' federal claims, the Court turns to the merits. Defendants seek dismissal of Plaintiffs' federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that they are not plausibly alleged. (Dkt. 23-1 at 7-17). The Court agrees, for the reasons that follow.

### A. Legal Standard.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the

complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

  **B.** <u>**Takings Claim**</u>

The Court considers first the viability of Plaintiffs' takings claim. "The Takings Clause of the Fifth Amendment states that private property shall not be taken for public use, without just compensation." *Knick v. Twp. of Scott, Pennsylvania*, ___ U.S. ___, 139 S. Ct. 2162, 2167 (2019) (alteration and internal quotation marks omitted). "The

paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

"It is well established that a takings plaintiff bears the burden of proof to establish that the government action caused the injury." *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1362 (Fed. Cir. 2018).  Importantly, "takings liability does not arise from government inaction or failure to act." *Id*. at 1361; *see also Lucien v. Johnson*, 61 F.3d 573, 576 (7th Cir. 1995) ("Accidental injuries are not takings"); *Martell v. City of St. Albans, Vermont*, 441 F. Supp. 3d 6, 21 (D. Vt. 2020) ("A property loss is compensable as a taking only when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." (quotation omitted)).  In other words, "[w]hile the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, it does not state a takings claim." *St. Bernard Par. Gov't*, 887 F.3d at 1360 (finding no takings liability where the government failed to maintain government-constructed channel).

Here, Plaintiffs' takings claim is premised on the Defendants' alleged negligence in maintaining and operating the Sewer Line, resulting in a clog and associated backflow.[1]

---

[1] Plaintiffs also assert in a purely conclusory fashion that Defendants' design of the Sewer Line was negligent.  (*See* Dkt. 15 at ¶ 149 ("Upon information and belief, the portion of the Sewer Line that caused the Incident was negligently maintained, operated, and designed by the Defendants.")).  However, they have asserted no facts whatsoever regarding the design of the Sewer Line or the manner in which said design is purportedly deficient.  This is accordingly also not a plausible basis for Plaintiffs' takings claim.

However, this is precisely the type of government inaction that has been found insufficient to support a takings claim. *New Holland Village Condominium v. DeStaso Enterprises Ltd.*, 139 F. Supp. 2d 499 (S.D.N.Y. 2001), *aff'd*, 29 F. App'x 760 (2d Cir. 2002), is on point. There, the plaintiffs attempted to assert a takings claim based on damage their properties had suffered when a hurricane damaged the Hyenga Dam, causing flooding; "[s]o great was the devastation that the National Guard had to be called out to help clean up the area." *Id*. at 501. The plaintiffs alleged that the defendants' deficient maintenance of the dam, "which had been rated a 'Significant Hazard' by the New York State Department of Environmental conservation as far back as 1978," was the cause of their damages. *Id*. The district court explained that "[i]t is well settled that claims sounding in negligence—even gross negligence, or negligence that results in grievous injury—cannot be disguised as constitutional claims and brought in a federal court under 42 U.S.C. § 1983." *Id*. at 503. Thus, because the defendants' failure to repair the known damage to the dam was not the kind of government action necessary to support a takings claim, the court granted the motion to dismiss. *Id*. at 504-05[2].

---

[2]   In accordance with then-existing jurisprudence, the district court in the *New Holland Village* case also made an alternative finding that the plaintiffs' takings claim was not ripe, because they had not first "availed themselves of New York's settled procedures for obtaining compensation[.]" 139 F. Supp. 2d at 504. However, in *Knick*, the Supreme Court overruled its prior decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), and held that a plaintiff need not seek a remedy in state court before bringing a constitutional takings claim. 139 S. Ct. at 2179 ("The state-litigation requirement of *Williamson County* is overruled. A property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government."). The ripeness concerns identified in *New Holland Village* thus do not apply here.

*Sunflower Spa LLC v. City of Appleton*, No. 14-C-861, 2015 WL 4276762 (E.D. Wis. July 14, 2015), is also instructive. There, the plaintiffs alleged "that on May 23, 2013, the City of Appleton's water main erupted and spewed some 360,000 gallons of water on the Plaintiffs' property, causing significant damage" and "that this event constituted a taking, without just compensation, in violation of the state and federal constitutions." *Id*. at *1. The *Sunflower Spa* court found that "[a]t its core the Plaintiff's allegations suggest the City was simply negligent in failing to properly maintain its water mains," and that this was not a basis for a takings claim—"[e]vents that the government might have prevented, but did not, do not constitute compensable takings under the Fifth Amendment." *Id*. at *2. Similarly, in *Funderburk v. S.C. Elec. & Gas Co.*, No. 3:15-CV-04660-JMC, 2019 WL 3504232 (D.S.C. Aug. 1, 2019), the court found that a municipality's failure to fix known drainage issues related to aging pipes was insufficient to support a takings claim. *Id*. at *5 (finding as a matter of law that the plaintiffs could not prevail on a takings claim merely by demonstrating that the municipality "failed to maintain, operate, or repair the drainage system").

Plaintiffs have cited no case in which a federal court has concluded that negligent conduct of the type alleged here is sufficient to support a takings claim. The Court agrees with Defendants that Plaintiffs' taking claim is not plausibly alleged and thus must be dismissed.

    C.    **Equal Protection Claim**

The Court next considers the viability of Plaintiffs' equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all

persons similarly situated be treated alike." *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quotation omitted). Here, Plaintiffs are attempting to assert a "class of one" equal protection claim, which requires them to demonstrate that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). With respect to the requirement of a similarly situated comparator, a class of one plaintiff must "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429 JS SIL, 2015 WL 1396442, at *4 (E.D.N.Y. Mar. 25, 2015) (citation omitted).

Plaintiffs allege as follows in support of their equal protection claim: "[u]pon information and belief, the portion of the Sewer Line that caused the Incident was negligently maintained, operated, and designed by the Defendants"; "[u]pon information and belief, other portions of Defendants' sewer system are intentionally better maintained, operated and designed"; and "Plaintiffs have been intentionally treated differently from other similarly situated [sic] and there is no rational basis for the difference in treatment." (Dkt. 15 at ¶¶ 149-151).

"[A]t the motion to dismiss stage bald allegations that defendants preferred one party over another are inadequate to state a claim for equal protection." *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009); *see also Ruston v. Town Bd. for Town*

*of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("As to the Town defendants, the [plaintiffs'] argument appears to be that the Town refused to consider their application while considering applications submitted by those similarly situated. However, the [plaintiffs] do not allege specific examples of the Town's proceedings, let alone applications that were made by persons similarly situated. The equal protection claim as to the Town defendants therefore fails for lack of factual allegations to support the legal conclusion."); *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (to state an equal protection claim, "more than a bare allegation that other[s] . . . were treated differently is required"). Plaintiffs' conclusory allegation that other, unspecified portions of the Village's sewer system have been better maintained, operated, and designed in some unspecified way does not render their claim that they have been treated differently than other, similarly situated individuals plausible. Put differently, the facts alleged by Plaintiffs would not permit a rational jury to find in their favor. In particular, Plaintiffs have failed to offer any information whatsoever regarding the properties located on the purportedly better maintained sections of the sewer system. *See Ruston*, 610 F.3d at 59 ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. . . . As the [plaintiffs] fail to allege that properties sufficiently similar to theirs were treated more favorably by either the Village or the Town, they have failed to state a 'class of one' equal protection claim." (citation and

alteration omitted)). Plaintiffs' equal protection claim must be dismissed as not plausibly alleged.[3]

### D. Supplemental Jurisdiction Over State Law Claims

Having determined, for the reasons set forth above, that Plaintiffs have not asserted a viable federal claim, the Court considers whether it should exercise supplemental jurisdiction over Plaintiffs' state law claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise supplemental jurisdiction over a claim under a number of circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction[.]" *Id*. § 1367(c)(3). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (internal citations and quotation marks omitted); *see also Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50, n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated

---

[3] Having found that Plaintiffs have not plausibly alleged a constitutional violation, the Court need not and does not reach Defendants' argument that Plaintiffs have not adequately alleged a factual basis for municipal liability pursuant to *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). *See Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Further, "[i]n situations where the removed federal claims have been dismissed, . . . concerns of comity and of federalism encourage remanding to the state courts cases in which state court adjudication can properly claim primacy of interest." *Sunnen v. New York State Dep't of Health*, 544 F. App'x 15, 17 (2d Cir. 2013) (quotation and original alteration omitted).

Here, given the early stage of the proceedings, the fact that the remaining causes of action involve quintessential areas of state law such as negligence, nuisance, and trespass, and the fact that this action originated in state court, the Court finds it appropriate to decline to exercise supplemental jurisdiction and to remand Plaintiffs' remaining state law causes of action.

## **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion to dismiss (Dkt. 23) with respect to Plaintiffs' federal claims. The Court further declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and remands the matter to New York State Supreme Court, Livingston County for consideration of the remaining claims. The Clerk of Court is instructed to mail a certified copy of this Decision and Order, with a clear reference to Supreme Court, Livingston County, Index No. 000047-2020, to the clerk of the state court, and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 30, 2021
       Rochester, New York